The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

**GULF, C. & S. F. RY. CO. v. BALLEW et al.**

No. 1438—6086.

Commission of Appeals of Texas, Section B.

Dec. 30, 1933.

Terry, Cavin & Mills, of Galveston, Irwin T. Ward, of Cleburne, and Lee, Lomax & Wren, of Fort Worth, for plaintiff in error.

Randell & Randell, of Sherman, Ocie Speer, of Austin, and O. O. Chrisman, of Cleburne, for defendants in error.

SMEDLEY, Judge.

Defendants in error sued plaintiff in error for damages on account of the death of their minor son, who was killed while a passenger on a special train. of plaintiff in error, by falling between two cars where the train parted immediately following the accidental application by a fellow passenger, near the middle of the train, of the air brakes in emergency. The jury found that the death was not proximately and solely due to the act of the fellow passenger. It also found that plaintiff in error was negligent in three particulars and that each of such acts of negligence was a proximate cause of the death. The negligence as so found by the jury consisted in the use of appliances for coupling the cars that broke in two which were worn, defective, and insufficient in strength, the use of two engines coupled together in such way as to increase the shock or strain on the coupling apparatus, and the use of too many cars in the train. Judgment for defendants in error was affirmed by the Court of Civil Appeals. The facts are more fully stated in the opinion of the Court of Civil Appeals reported in 39 S.W.(2d) 180, 183.

The principal contention of plaintiff in error is that it was not responsible under the law for the break-in-two of the train and the death of the deceased because they were proximately and solely due to the unauthorized and unforeseeable act of a passenger in accidentally applying the air brakes in emergency; such act constituting a new, intervening, and independent cause. The Court of Civil Appeals, in affirming the judgment of the trial court, held that the act of the passenger in making an accidental application of the emergency brakes merely contributed a condition necessary to give the original negligence of plaintiff in error an injurious effect, that such act did not entirely supersede the original negligence, and was not necessarily of such a character as could not have been foreseen or anticipated, and therefore did not absolve plaintiff in error from liability for its negligence.

We have carefully examined the opinion of the Court of Civil Appeals, the record in the case, the briefs, and the authorities cited in them, and are of the opinion that, in view of the manner in which the case was tried and submitted to the jury, the answers of the jury to the issues submitted, and the evidence, the Court of Civil Appeals correctly decided this, the principal question in the case, and we approve the opinion of that court, in so far as it discusses the questions presented. It is deemed advisable, however, to set out some of the reasons for our approval and to refer to authorities not cited by the Court of Civil Appeals.

While ordinarily it is a question of fact whether an intervening act or agency causing or contributing to the injury ought to have been foreseen by the original wrongdoer, no such issue was in so many words submitted or requested to be submitted to the jury. The jury found that plaintiff in error was negligent in the use of a defective knuckle in the coupling, in the use of two engines, and in the use of too many cars in the train, and that each of these acts of negligence was a proximate cause of the death of the deceased. It further found that the death was not proximately and solely due to the act of the fellow passenger in causing the air brakes to be applied in emergency. These findings mean in effect that the act of the fellow passenger did not supersede the original negligence and that it and such negligence together brought about the injury, or, in other words, that the new act or agency did not break the causal connection between the negligence of plaintiff in error and the injury.

The conclusion of the Court of Civil Appeals appears to have been based both upon the ground that the act of the fellow passenger was but a new cause concuring with the original negligence which continued and cooperated with the new cause in the resulting injury, and upon the ground that the act was a new intervening cause of such character as could have been foreseen or anticipated. Both grounds find support in the authorities; the first, in those cited in the opinion of the Court of Civil Appeals, and also in the following authorities: Sandel v. State, 115 S. C. 168, 104 S. E. 567, 13 A. L. R. 1268; Mahoney v. Beatman, 110 Conn. 184, 147 A. 762, 66 A. L. R. 1121; 22 R. C. L. pp. 129, 130; and the second, in Seale v. G., C. & S. F. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602; Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, 164; 22 R. C. L. p. 132.

[1] It is to be remembered that the question for ultimate determination in a case like

this is whether or not the original negligent or wrongful act may be deemed the proximate cause of the injury, and that the test for determining such question is whether the injury, or a similar injury, might reasonably have been anticipated as the natural and probable result of the act. See the authorities last above cited, and also Gulf, C. & S. F. Ry. Co. v. Bennett, 110 Tex. 262, 219 S. W. 197; San Antonio & A. P. Ry. Co. v. Behne (Tex. Com. App.) 231 S. W. 354.

The intervention of a new cause or agency becomes important because, if it is such as could not reasonably have been anticipated, it may serve to make the resulting injury unforeseeable to the original wrongdoer. As said by Judge Gaines in Texas & P. Ry. Co. v. Bigham, supra: "The fact of the intervention of an independent agency, it occurs to us, bears more directly upon the question whether the injury ought, under all the circumstances, to have been foreseen."

Here, as has been pointed out in a carefully considered South Carolina case (Sandel v. State, 115 S. C. 168, 104 S. E. 567, 13 A. L. R. 1268), it is important to note that the difference between intervening causes and concurring causes is often overlooked. A failure to observe this difference probably accounts for the apparent conflict between the rule stated in Seale v. Ry. Co., supra, to the effect that, according to current authority, the connection between the original negligent act is broken, and the original wrongdoer relieved of liability, if the intervening cause and its probable or reasonable consequences be such as could not reasonably have been anticipated by the original wrongdoer, and the rule announced in Texas Power & Light Company v. Culwell (Tex. Com. App.) 34 S.W.(2d) 820, and in Texas Public Service Company v. Armstrong (Tex. Civ. App.) 37 S.W.(2d) 294 (application for writ of error refused), that the intervention of an unforeseen and unexpected cause is not sufficient to relieve a wrongdoer from the consequences of negligence if such negligence directly and proximately co-operates with the independent cause in the resulting injury.

■ The first authority deals with a true intervening act or agency, which supersedes the original negligent act, and of itself operates as the efficient cause; whereas, the second authorities have to do with concurrent negligence or a concurrent act which co-operates with the still persisting original act in bringing about the injury. When the new cause or agency concurs with the continuing and co-operating original negligence in working the injury, the original negligence remains a proximate cause of the injury, and the fact that the new concurring cause or agency may not in such case have been reasonably foreseeable should not relieve the wrongdoer of liability. That such fact does not so relieve him is held in Texas Power & Light Company v. Culwell, and Texas Public Service Company v. Armstrong, supra, and by the following other authorities: Sandel v. State, 115 S. C. 168, 104 S. E. 567, 13 A. L. R. 1268; Mahoney v. Beatman, 110 Conn. 184, 147 A. 762, 66 A. L. R. 1121.

■ Applying the rules above discussed to the facts of the case, including both the facts found by the jury and the undisputed facts, we are of the opinion that, under the general rule first discussed, and in view of the high degree of care owed by the carrier to its passengers, it cannot be said as a matter of law that the actual injury, or a like injury to a passenger, might not reasonably have been anticipated as the natural and probable result of the operation of the train in the condition and manner in which it was assembled and operated.

Referring more particularly to the act of the fellow passenger in applying the air brakes in emergency, it is our opinion that under the facts the application of the brakes was a concurring cause rather than an intervening cause, for the reason that, according to the findings of the jury, such act on the part of the fellow passenger did not supersede the original negligence of plaintiff in error, which still continued and co-operated with the new act or agency in bringing about the injury. Up to the very time the train broke in two it was operated with the defective coupling, and with two engines and the great number of cars, all of which conditions co-operated with the setting of the brakes in causing the train to break in two, and all of which conditions were substantial factors in producing the injury. Under the doctrine of concurring negligence above discussed, it is immaterial whether the setting of the brakes in emergency should reasonably have been anticipated.

If, however, the setting of the brakes in emergency is to be regarded as an intervening cause as distinguished from a concurring cause, and if plaintiff in error would be relieved of liability under the general rule which has been stated, in the event such intervening cause was of such character as could not have been foreseen or anticipated, then we share the opinion of the Court of Civil Appeals that the intervening cause was not necessarily one that could not have been anticipated.

As said in the opinion in Fort Worth Gas Co. v. Cooper (Tex. Civ. App.) 241 S. W. 282, 284, it is not essential "in order to make a negligent act the legal proximate cause of an injury, that the particular injurious consequences and the precise manner of their infliction could have been reasonably foreseen, but some like injury produced by similar intervening agencies." See, also, S. A. & A. P. Ry. Co. v. Behne (Tex. Com. App.) 231 S. W. 354; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 227, 38 S. W. 162; Sandel v. State, 115 S. C. 168, 104 S. E. 567, 13 A. L. R. 1268. Upon the same

principle, as held by the Court of Civil Appeals, "the doctrine of foreseeableness does not require that the exact time, manner or occasion of the emergency application should have been anticipated."

It is true that it could not reasonably have been foreseen that the brakes would have been set in emergency by a passenger when crawling through the narrow opening made by lowering a glass panel at the top of the car door. But the train was equipped with air brakes that could be applied in emergency on this very car, and in our opinion it cannot be held as a matter of law that plaintiff in error could not reasonably have foreseen or anticipated an occasion for the application of the air brakes in emergency on one of the cars with the resulting breaking in two of the train and the injury of a passenger.

Plaintiff in error presents a proposition that its negligence, if it was negligent, was not shown to have been the proximate cause of the death of the deceased because the uncontradicted evidence established the fact that the accident would not have occurred except for the breaking of the coupler knuckle, and that the emergency application of the air brakes subjected the knuckle to a stress and strain much greater than a new knuckle free from defect was designed to withstand. The position here taken is that under the same circumstances a new knuckle would have broken; and that therefore plaintiff in error cannot be held liable on account of a worn and defective knuckle. This position ignores the other acts of negligence found by the jury, namely, the use of two engines and the use of seventeen cars in the train. According to the testimony, both the use of the two engines and the use of the great number of cars greatly increased the stress and strain on the knuckle. The testimony of plaintiff in error's assistant superintendent of air brakes shows that, following the application of the air brakes in emergency near the middle of the train the stress or strain was communicated up the train until it got to the knuckle that broke, and that in determining the stress or strain that the knuckle would be subjected to when the air was applied in emergency near the middle of the train, he took into consideration the striking force, arrived at by multiplying the weight by the square of the velocity. The engineer who was in charge of the train at the time of the accident testified that when the air was applied in emergency the strain grew greater as each car was set in emergency, and that as the strain was communicated up the train it grew greater at each car to an extent in proportion to the number of cars. The assistant superintendent of air brakes testified that if the train had been assembled in two equal sections, with one engine for each section, there would have been a difference in the strain on the coupling; that the strain would have been less. He did not testify as to the

extent of such difference. It is not an unreasonable inference from the facts in evidence that a knuckle free from defect and not worn would not have broken had the train been operated in two equal sections.

In view of this evidence and the findings of the jury that plaintiff in error was negligent in operating the train with two engines and seventeen cars, it cannot be held that there was no evidence to support the finding as to the proximate cause or causes of the injury. Nor can we sustain the contention that there was no evidence to support the jury's findings of negligence on the part of plaintiff in error.

■■ Error is assigned on two grounds to that portion of the instructions given by the court in connection with the submission of the issue as to the amount of damages in which the jury was instructed that "the plaintiffs will be entitled to recover the pecuniary value of their son's service until he had arrived at the age of twenty-one years," first, because the same was on the weight of the evidence, and, second, because there was no evidence supporting said portion of the charge.

The instructions of the court in connection with said issue were as follows: "In connection with the above question you are instructed that the plaintiffs will be entitled to recover the pecuniary value of their son's service until he had arrived at the age of twenty-one years, less the cost and expense of his care, support and maintenance, during the period of his minority, and also the reasonable expenses incurred by plaintiffs for funeral expenses; and if you further believe that plaintiffs had a reasonable expectation of receiving from the said Chester G. Ballew, had he lived, considering his position and ability, contributions to their wants and necessities after he reached his majority, then plaintiffs are entitled to recover whatever pecuniary aid they had a reasonable expectation of so receiving, if any. But in this connection you are further instructed that the plaintiffs are not entitled to recover anything by way of compensation for grief, sorrow, loss of society or companionship caused by the death of their son, Chester G. Ballew."

The contention first made by plaintiff in error appears to be that the charge was on the weight of the evidence because it assumed that the services of the minor had a pecuniary value to the parents. We find no merit in such contention. It is difficult to imagine a case where it could be possible that the services of an eighteen year old son, healthy, intelligent, and of good character, living with his parents, would be of no pecuniary value whatever to them. The charge states a correct rule of law. Parents are entitled to the services of their minor child, and to the value of such services. Furthermore, charges in substantially the same language given in similar cases have often been approved. St. Lou-

is, etc., Ry.: Co. v. Shiflet, 98 Tex. 102, 81 S. W. 524; Brunswig v. White, 70 Tex. 504, 8 S. W. 85; Gulf, C. & S. F. Ry. Co. v. Compton, 75 Tex. 667, 13 S. W. 667; Cole v. Parker, 27 Tex. Civ. App. 563, 66 S. W. 135; English v. Miller (Tex. Civ. App.) 43 S.W.(2d) 642 (application for writ of error refused); Pearce v. Hallum (Tex. Civ. App.) 30 S.W.(2d) 399 (application for writ of error refused); City of Galveston v. Barbour, 62 Tex. 172, 50 Am. Rep. 519.

It is also argued that this portion of the instructions is on the weight of the evidence because it in effect instructs the jury that plaintiffs are entitled to recover. It is hardly possible that the jury would have understood the words "will be entitled to recover" as an expression of the court's opinion that a verdict should be returned for the plaintiffs, when the case was submitted on special issues and when the words were used merely in giving the jury a rule for determining the amount which would compensate plaintiffs for the death of their son. However, in view of another trial and to avoid any possible misunderstanding on the part of the jury, it is recommended that the jury be instructed that in determining the amount of the damages it take into consideration the pecuniary value of the son's service, etc., rather than that "the plaintiffs will be entitled to recover" the pecuniary value, etc.

It cannot be said that there was no evidence whatever that the services of the minor son had a pecuniary value to the parents. He lived with them, was dependable, minded his father, was affectionate to both parents at all times, was high-minded, intelligent, industrious and energetic. From these facts it reasonably, if not necessarily, follows that he rendered services of a pecuniary value to his parents. Furthermore, while attending school he worked in a tailor shop. His earnings from this employment lawfully belonged to his parents. The evidence shows that the boy, a very few days before his death, expressed a purpose to stop going to school at the end of the year and to stay with his father and mother and help them because the father was getting too old to work. It is true that there is no evidence that the boy actually made contributions of money to his parents, but his services doubtless had a pecuniary value to the parents without contribution of money. Ruling Case Law announces the following rule, supported by many authorities: "Where the pecuniary loss to the parent constitutes the measure of damages, the present value of the probable contributions by the child to the use of the parent, whether in money or in services, taking in view the probable cost of the child's maintenance and education, is the principal element of damages for the consideration of the jury." Volume 8, p. 835.

█ Reversal is necessary on account of improper argument by one of the attorneys for defendants in error who during the opening address to the jury stated that he could give the jury some guide by which to measure the damages to be awarded in the case, and that was the adjusted compensation of $10,000 paid by the United States government to its soldier boys. When objection was made, the attorney making the argument promptly requested the jury to disregard his remarks, and the court sustained the objection and instructed the jury not to consider the argument. The jury found plaintiffs' total damages to be $10,580. The evidence showed that the funeral expenses amounted to $580.

The evidence by which the damages could be measured was meager and the verdict large. It appears that the jury seized upon the suggestion of the attorney as affording an easy solution of a somewhat difficult problem, and that the answer to the issue as to the amount of the damages was based, not upon the evidence, but upon the attorney's suggestion and statement of a fact entirely outside of the record.

It has many times been held that where improper argument has been made, "the adverse complaining party is entitled to reversal of the judgment, as a matter of law, if, under all the circumstances, there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted." Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 24 S.W.(2d) 363, 365; Id. (Tex. Com. App.) 39 S.W.(2d) 1091. See, also, Hubb Diggs Co. v. Bell, 116 Tex. 427, 293 S. W. 808; Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; Davis v. Hill (Tex. Com. App.) 298 S. W. 526; Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W.(2d) 435; Texas Indemnity Company v. McCurry (Tex. Com. App.) 41 S. W.(2d) 215, 78 A. L. R. 760; Robbins v. Wynne (Tex. Com. App.) 44 S.W.(2d) 946.

The same authorities hold that attempts of counsel to withdraw the improper argument and instruction by the court not to consider it do not necessarily render the error harmless.

In this case counsel deliberately stated a fact entirely outside of the record, and gave it to the jury as evidence by which to measure the damages, when it was the duty of the jury under the law and according to the court's charge to measure the damages only by the facts in evidence. Considerably more than a reasonable doubt is raised by the amount of the verdict as to the harmful effect of the argument. It appears almost certain that the argument had the desired effect, and that such effect was never removed from the minds of the jury.

We recommend that the judgment of the Court of Civil Appeals and that of the district court be reversed and the cause remanded.

**CURETON, Chief Justice.**

The judgments of the district court and the Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.